GENERAL TELERADIO, INC., et al., Appellants, *v.* AL MANUTI, as President of Associated Musicians of Greater New York, Local 802, American Federation of Musicians of United States and Canada, et al., Respondents.

First Department, June 8, 1954.

*Emanuel Dannett* of counsel (*Wilfred Feinberg* with him on the brief; *McGoldrick, Dannett, Horowitz & Golub,* attorneys), for appellants.

*David I. Ashe* of counsel (*Ashe & Rifkin,* attorneys), for respondents.

COHN, J. Plaintiffs are engaged in the business of radio and television broadcasting, operating stations WOR and WOR-TV pursuant to authority granted by the Federal Communications Commission. The defendant union is a labor organization of professional musicians.

For a number of years peaceful relations have existed between plaintiffs and the union under collective bargaining agreements, the last of which expired in February, 1954. Under this last agreement, plaintiffs were required to employ at their stations WOR and WOR-TV a staff orchestra of forty musicians. Early in the year 1954, negotiations were had for a new agreement. The union demanded that plaintiffs continue to employ a staff orchestra of forty musicians or in the alternative, that plaintiffs use the services of single-engagement musicians in place of recorded or transcribed music on all "live" programs. Plaintiffs took the position that they did not need a staff orchestra and had no desire to employ forty musicians or any other number on a staff basis. Negotiations broke down.

The union began picketing in front of plaintiffs' places of business in the city of New York and at Carteret, New Jersey. The pickets displayed signs charging plaintiffs with having locked out its musicians. This action in equity seeking to restrain defendants from picketing plaintiffs' premises was instituted. Plaintiffs moved for a temporary injunction and defendants made a cross motion to dismiss the complaint. Plaintiffs have appealed from the order denying their motion for temporary injunction and from the order granting the cross motion to dismiss the complaint.

The complaint alleges, among other things, that defendant union entered into a conspiracy to compel plaintiffs to comply with the union's demands, in furtherance of which, the union picketed plaintiffs' places of business, using signs stating that plaintiffs had "Locked Out Its Musicians". It is further alleged that there is no labor dispute existing between the parties and that the picketing is designed solely to compel plaintiffs to use employees not needed by plaintiffs to perform actual services in connection with their broadcasting business and to compel plaintiffs to discontinue the use of recorded and transcribed music.

Appellants urge that the complaint sets forth a violation of a Federal statute known as the Lea Act (U. S. Code, tit. 47, § 506). The pertinent provisions of the Lea Act are as follows:

" (a) It shall be unlawful, by the use or express or implied

threat of the use of force, violence, intimidation, or duress, or by the use or express or implied threat of the use of other means, to coerce, compel or constrain or attempt to coerce, compel or constrain a licensee —

" (1) to employ or agree to employ, in connection with the conduct of the broadcasting business of such licensee, any person or persons in excess of the number of employees needed by such licensee to perform actual services; or * * *

" (4) to pay or give or agree to pay or give any money or other thing of value for services, in connection with the conduct of the broadcasting business of such licensee, which are not to be performed; * * *

" (b) It shall be unlawful, by the use or express or implied threat of the use of force, violence, intimidation or duress, or by the use or express or implied threat of the use of other means, to coerce, compel or constrain or attempt to coerce, compel or constrain a licensee or any other person —

" (1) to pay or agree to pay any exaction for the privilege of, or on account of, producing, preparing, manufacturing, selling, buying, renting, operating, using, or maintaining recordings, transcriptions, or mechanical, chemical, or electrical reproductions, or any other articles, equipment, machines, or materials, used or intended to be used in broadcasting or in the production, preparation, performance, or presentation of a program or programs for broadcasting; or

" (2) to accede to or impose any restriction upon such production, preparation, manufacture, sale, purchase, rental, operation, use, or maintenance, if such restriction is for the purpose of preventing or limiting the use of such articles, equipment, machines, or materials in broadcasting or in the production, preparation, performance, or presentation of a program or programs for broadcasting; ".

Punishment for violating the act is imprisonment for not more than a year or a fine of not more than $1,000 or both. No civil remedies by way of injunction or otherwise in behalf of an aggrieved licensee are provided.

The union argues that plaintiffs' entire case rests upon an alleged violation by respondents of the Lea Act.

Paragraph " Eighteenth " of the complaint, as the learned Justice at Special Term pointed out, does set forth a violation of the Lea Act. The paragraph reads as follows: " There is no labor dispute existing between plaintiffs and defendant union or its members, and the picketing and boycotting carried

on and the threats made by said defendants, their agents, servants and employees, are for an unlawful labor objective, and solely for the purpose of compelling plaintiffs to employ, in connection with their broadcasting business, musicians in excess of the number needed by plaintiffs to perform actual services in connection with their broadcasting business and to compel plaintiffs to discontinue the use of recorded or transcribed music."

In this case it appears that a Federal penal statute has been enacted for the benefit of broadcasters, such as plaintiffs. It provides for the imposition of penal provisions to be imposed upon application by the Government, but grants no remedies to the protected class. The rule is well settled that where a criminal or penal statute imposes a duty but furnishes no civil remedy to the protected class, a breach of that duty gives rise to a cause of action in favor of the latter class. Where, as here, the complaint alleges a violation of a Federal statute, a State court has full power to enforce the liability which arises from the breach of such statutory duty. (*Claflin* v. *Houseman,* 93 U. S. 130, 136, 137; *Second Employers' Liability Cases,* 223 U. S. 1, 56, 57; *Fairport R. Co.* v. *Meredith,* 292 U. S. 589, 594, 595.) In *Claflin* v. *Houseman* (*supra*), the United States Supreme Court said at page 137: " If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court. The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent."

More recently the Supreme Court has stated that a State court cannot " ' refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers ' ". (*Testa* v. *Katt,* 330 U. S. 386, 393.)

In this State it has been held that where there is a penal State statute which imposes a duty upon another, any person having a special interest in the performance thereof may sue for its breach. (*Willy* v. *Mulledy,* 78 N. Y. 310, 314; *Amberg* v. *Kinley,* 214 N. Y. 531, 535.)

The doctrine of tort law of New York State is that "*prima facie,* the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of the pleading, requires a justification if the defendant is to escape." (*Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79, 83; *Aikens* v. *Wisconsin,* 195 U. S. 194, 204.)

Without considering other arguments urged by plaintiffs in support of the sufficiency of the complaint, we hold that the provisions of the Lea Act with their restrictive criminal clauses, which contain no civil remedies in favor of aggrieved parties, give a right of action with power in the State courts to enforce civil remedies in favor of aggrieved parties.

Violation of the Lea Act, as alleged in the complaint, is an allegation of fact that defendants acted without justification, and hence are liable under the laws of this State for injury intentionally inflicted upon another without justification. In view of this alleged violation there is here no labor dispute. Plaintiffs would be entitled to the relief they seek in the event that they establish as facts the charges set forth in their complaint.

Accordingly, the order granting defendants' motion to dismiss the complaint and the final judgment entered thereon should be reversed and the motion should be denied.

As to the appeal from the order denying the application for an injunction *pendente lite,* there is no proof that acts of the union have up to this time caused irreparable damage. All other employees have passed the two pickets used without being molested in any way, and apparently plaintiffs' operations have continued without interruption. Any alleged false representations made on the picket signs, as we are informed, have been voluntarily removed. There is no evidence before us of any violence, or intimidation, or duress, or of attempted secondary boycotting. As to whether plaintiffs are entitled to a permanent injunction can best be determined upon a plenary trial which should be had without unnecessary delay. In the circumstances, we think that the Special Term properly denied the application for a preliminary injunction. The order denying such relief should accordingly be affirmed.

Order denying plaintiffs' motion for preliminary temporary injunction, should be affirmed. Order and judgment dismissing the complaint should be reversed and motion to dismiss denied. Settle order.

PECK, P. J., BREITEL, BOTEIN and BERGAN, JJ., concur.

Order denying plaintiffs' motion for preliminary temporary injunction unanimously affirmed. Order and judgment dismissing the complaint unanimously reversed and the motion to dismiss denied. Settle order on notice.