126

Philip Myer, Appellant, *v.* Shields & Company, Respondent.

First Department, March 8, 1966.

*Philip Myer,* appellant in person.

*Robert S. Groban* of counsel (*Stephen B. Wexler* with him on the brief; *Groban & Rava,* attorneys), for respondent.

McNally, J.    In this nonjury action by a customer against a stockbroker for breach of contract and money had and received, the complaint was dismissed by the learned trial court at the conclusion of plaintiff's case and his motion for a new trial denied on the ground that the transaction between the parties was illegal in that it violated the provisions of the Securities Exchange Act of 1934 (U. S. Code, tit. 15, § 78g, subds. [c], [d]; § 78cc, subds. [a], [b]) and regulation T issued by the Board of Governors of the Federal Reserve System thereunder, establishing a 70% margin and forbidding extension of credit for the purpose of purchasing listed securities.    The Appellate Term affirmed without opinion.    We are of the opinion that this holding was error.

The motion to dismiss was made in the following language: " The type of motion I have made assumes that Mr. Myer was telling the truth one hundred percent, and I rest on the question of law ".

The trial court considered only the question of illegality of the agreement between the parties as testified to by plaintiff. The evidence is as follows.

Defendant agreed to buy for plaintiff 100 shares of Mesabi Iron Company stock at $120 per share plus commission. Payment was to be made as follows: $4,000 within a week or 10 days, $4,000 within three or four weeks, and the balance within 90 days. Plaintiff paid the installments but defendant refused to deliver the stock until it received an additional $2,125 plus interest. Plaintiff paid this sum under protest and brought this action for its recovery.

Defendant's version of the transaction appears to be that it undertook to buy for plaintiff, not 100 shares of Mesabi stock at a total price of $12,000, but 1,000 rights to subscribe to Mesabi stock, for which rights plaintiff agreed to pay $8,125; that the 1,000 rights entitled the holder to receive 100 shares of stock upon payment of $6,000; that defendant exercised the rights for plaintiff's account; that the total cost of the stock was thus $8,125 plus $6,000, or $14,125; and that, since defendant had received only $12,000, a balance of $2,125 was due.

Undeniably the credit arrangements to which plaintiff testified were unlawful for they contemplated a purchase transaction without deposit of the required 70% margin within the required four business days. We assume that such an agreement embodying such arrangements is declared void by the Securities Exchange Act. It does not necessarily follow however that a customer to whom credit is unlawfully extended may be refused his stock after he has paid for it in full.

The following well-considered Federal cases lend support to plaintiff's claim. (*Smith* v. *Bear*, 237 F. 2d 79; *Reader* v. *Hirsch & Co.*, 197 F. Supp. 111; *Remar* v. *Clayton Securities Corp.*, 81 F. Supp. 1014.) They declare the dominant purpose of the margin provisions is the protection of the small speculator by making it impossible for him to spread himself too thin. If a broker " extends credit to a customer in violation of the Act or the regulations promulgated pursuant thereto, all to induce a customer to purchase securities, then the broker has violated the law and the customer may recover from him any loss proximately resulting therefrom ". (*Smith* v. *Bear, supra*, pp. 87–88.) The customer's right of action is not affected by his participation in the transaction " since the Legislature regarded him as incapable of protecting himself ". (*Remar* v. *Clayton Securities Corp., supra*, p. 1017.)

Apposite is the following observation (*Reader* v. *Hirsch & Co., supra*, p. 114) : " It is now well established that where one

violates a legislative enactment by doing a prohibited act and thereby causes injury to another, the latter has a civil right of action if one of the purposes of the statute was to protect interests similar to his own. 2 Restatement, Torts § 286 (1934)."

Section 29 of the Securities Exchange Act (U. S. Code, tit. 15, § 78cc) declares a contract made in violation of the act, or of any rule or regulation thereunder, void " as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract ".

The statute proscribes the extension and maintenance of credit for the purchase of stock. This does not mean that the customer to whom credit is extended or for whom it is arranged has acted in violation of the act or any rule or regulation thereunder. As was well stated by WYZANSKI, J., in *Remar* v. *Clayton Securities Corp.* (*supra,* p. 1017):

" Broadly stated, the rule is that where defendant's violation of a prohibitory statute has caused injury to plaintiff the latter has a right of action if one of the purposes of the enactment was to protect individual interests like the plaintiff's. * * *

" Plaintiff's right of action is not affected by his participation as borrower in the transaction in which Clayton and the bank violated the statute. Since the statute was passed for the benefit of people like plaintiff, and since the Legislature regarded him as incapable of protecting himself, he is not disabled from suing for the injury he sustained. * * * This principle may be compared with the rule that allows a plaintiff to enforce or rescind a contract made in violation of a statute if the violation was by defendant and the plaintiff belongs to the class for whose benefit the statute was enacted."

Although we are not strictly bound to follow the construction of a Federal statute made by Federal courts other than the United States Supreme Court (*People ex rel. Ray* v. *Martin,* 294 N. Y. 61, 73), we usually give due and great respect to such holdings. In this regard the well-reasoned opinions in the above-cited cases are sufficiently persuasive authority for holding as we do. Further, *Klein* v. *Comenzo Co.* (207 N. Y. S. 2d 739), relied on by defendant, does not state the facts nor does it attempt to deal with the principle applicable to legislation for the benefit of a class, of which plaintiff is one.

Accordingly, the determination of the Appellate Term and the judgment and order appealed from should be reversed, on the law, and a new trial granted, with costs to abide the event.

Botein, P. J., Stevens and Bastow, JJ., concur.

Determination of the Appellate Term and judgment and order of the Civil Court unanimously reversed, on the law, with costs to abide the event, and a new trial ordered.