Frank J. Pino, J.
In this action the parties have stipulated to waive a jury trial and to the making by the court of a determination on an agreed statement of facts.
Plaintiff is an attorney. Defendants are members of the New York Stock Exchange, in business for over 40 years, and duly registered with the Securities and Exchange Commission. On February 13,1964, plaintiff opened accounts with defendants for the purpose of buying and selling securities; and on February 28, 1964, he signed a lending or margin agreement, the pertinent provisions of which read as follows:
“Any and all securities * * * now or hereafter held or carried by you in any of my accounts * * * are to be held by you as security for the payment of any liability to you in any of said accounts, with the right on your part to transfer moneys or securities from any one of my accounts to another when in your judgment such transfer may be necessary.
“ You shall have the right, whenever in your discretion you consider it necessary for your protection * * * to sell any or all securities * * * in my accounts with you * * * and to close any or all outstanding contracts, all without demand for margin or additional margin * * * notice of sale * ■ * * or other notice * * * and any such sale * * * may be made in your discretion on any exchange * * * where such business is then usually transacted * * * and it being further understood that I shall at all times be liable for the payment of any debt balance owing in any of my accounts with you upon demand, and that I shall be liable for any deficiency remaining in any such accounts in the event of the liquidation thereof in whole or in part by you or by me.
“ All communications * * * sent to my home address * * * shall constitute personal delivery to me.”
Plaintiff’s accounts were of three kinds, namely, a cash account, a special subscription account, and a margin account.
*841 The cash account consisted only of two transactions, in the first of which plaintiff purchased certain stock for $1,080 and sold it for $1,200.60, realizing a small profit thereon. In the second transaction plaintiff purchased for $54,694.30 another stock which was subsequently sold and the proceeds of $56,752.04 credited to his account. No money had been put up by plaintiff for this purchase.
With respect to the special subscription account, plaintiff bought, through it, on a lawful posting of 25% cash, sufficient rights to acquire 250 shares of common stock of the American Telephone and Telegraph Company. The sum paid was $10,829.
The margin account consisted of 19 purchases and 3 sales, in May, 1964, of substantial amounts of stock, all of which were authorized by plaintiff. However, at no time during these transactions, was any additional money actually paid or laid out by plaintiff either by check or cash.
On June 1, 1964, defendants decided that plaintiff’s margin account was insufficient. Accordingly, on that day they sent a telegram to plaintiff stating that if a deposit of $303,275 was not received by 10:30 a.m. on June 2, 1964, sufficient of his securities would be sold on the appropriate exchange and he would be held liable for any loss incurred thereby. Plaintiff did not comply and defendants therefore proceeded to sell for plaintiff’s account on June 2 and June 3, 1964 substantial quantities of his securities.
On June 4, 1964, plaintiff had been obliged to post margin on stock which he had previously purchased. Having failed to do so, his account was again in deficit. Accordingly, on the morning of that day, defendants sent a telegram to plaintiff stating that if the sum of $217,472 was not received by 2:00 p.m. on June 4,1964, sufficient securities would be sold on the appropriate exchange and he would be held liable for any loss incurred thereby. A second telegram was sent about 4:30 p.m. on that day wherein it was stated that if a certified check or cash in the sum of $217,472 was not received before 2:00 p.m. on June 5,1964, sufficient securities would be sold on the appropriate stock exchange and plaintiff would be held liable for any loss incurred thereby. Plaintiff did not reply to either of these telegrams and accordingly, on June 4 and June 5, 1964, defendants sold not only all of plaintiff’s securities in his margin account but also the 250 shares of A. T. & T. stock held in the special subscription account. A deficit of $33,508.13 resulted, for which defendants seek judgment against plaintiff on their counterclaim. Plaintiff asks judgment against defendants in *842 the sum of $10,829 for the alleged illegal sale of his American Telephone and Telegraph Company stock.
It is the contention of plaintiff that defendants, between May 18,1964 and June 1, 1964 permitted him to purchase substantial amounts of securities on margin without an adequate deposit; that such activity was in direct violation of regulation T of the Federal Reserve Board; that allowing plaintiff to purchase stock without the required 70% margin was an inducement to him to overextend himself, in violation of law; and that therefore defendants are barred from recovering any moneys from plaintiff. The latter also contends that the sale of his A. T. & T. stock, to make up the deficiency on the sales of the stock held in the margin account, was an illegal act, thereby giving plaintiff the right to recover on his cause of action.
Defendants contend that plaintiff’s account was adequately margined to meet the requirements of regulation T. In support of their position they claim that payments for purchases made on the various days were not due until their respective settlement days and that on those days there was on hand more than the required 70% margin. With respect to the settlement day of May 27, defendants assert that there is nothing to show that the market value of the securities for which settlement was due on that day, plus the excess cash in the margin account, together with the market value of the A. T. & T. stock, was insufficient to keep the account in margin. The defendants further contend that even if they were in violation of regulation T in respect to the margin requirements, that would not defeat their right to recover the deficit in plaintiff’s margin account.
The primary purpose “ of the margin provisions is the protection of the small speculator by making it impossible for him to spread himself too thin. If a broker extends credit to a customer in violation of the Act or the Regulations promulgated pursuant thereto, all to induce a customer to purchase securities, then the broker has violated the law and the customer may recover from him any loss proximately resulting therefrom.” (Myer v. Shields & Co., 25 A D 2d 126.)
The case of Myer v. Shields Co. (supra) involved a situation where the parties entered into a credit arrangement in advance to purchase stock, without deposit of the required 70% margin within the required four business days. Such agreement was held void as it violated a rule or regulation promulgated pursuant to the Securities Exchange Act of 1934.
In the case at bar, we are dealing with the usual arrangement in which a customer orders securities, the orders are executed *843 by the broker, payment is not made within the required number of days, and the account is liquidated.
Did the defendants extend credit to plaintiff in an amount which was in excess of the limits permitted by the regulations of the Federal Reserve Board, for the purpose of inducing plaintiff to purchase securities'? From an analysis of the transactions engaged in between the parties there does not appear to be any special course of conduct on the part of defendants from which it can be said that plaintiff was induced to purchase stock without the necessary margin deposit. Nor does it appear to the court that plaintiff’s margin account, during the period of his trading and up until June 1, 1964, was inadequate to meet the requirements prescribed by regulation T.
Assuming, arguendo, that defendant brokers did not enforce the margin requirements imposed by law, that would not prevent them from recovering the damages caused by the customer’s failure to pay. (Nichols & Co. v. Columbus Credit Corp., 204 Misc. 848, affd. 284 App. Div. 870.)
'The selling, after notice, of plaintiff’s stocks, including his A. T. & T. shares, was proper. The margin agreement clearly authorized defendants to sell securities from either of plaintiff’s accounts, including the special subscription account, without prior notice to or demand on plaintiff, whenever defendants considered it necessary for their protection. They also acted with due diligence in doing so. Plaintiff is responsible for the deficiency in the margin account under the terms of the agreement and by law (see Kirsch & Co. v. Pattiz, 19 A D 2d 607).
The complaint is dismissed and judgment awarded to defendants on their counterclaim in the sum of $33,508.13, with interest.