Jack **GOLOB** et al., Plaintiffs,

v.

**NAUMAN VANDERVOORT, INC.,**
Defendant.

Civ. No. C–71–15.

United States District Court,
N. D. Ohio, W. D.

May 17, 1972.

On Motion for Reconsideration
July 28, 1972.

Norman Rubinoff, Spengler, Nathanson, Heyman McCarthy & Durfee, Toledo, Ohio, for plaintiffs.

E. Thomas Maguire, Robison, Curphey & O'Connell, Toledo, Ohio, for defendant.

## MEMORANDUM

DON J. YOUNG, District Judge:

This cause came to be heard on motion of the defendant for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Defendant has filed a memorandum and reply memorandum in support thereof, although it did not seek leave of this Court to file the latter. Plaintiffs have filed a memorandum in opposition to the motion for summary judgment.

It is axiomatic that in a motion for summary judgment the Court must ascertain whether there is a genuine issue as to a material fact after viewing

the record in a light most favorable to the party being moved against. If there is, as a matter of law, this Court cannot enter summary judgment on the issue in question. With that in mind, the Court will examine plaintiffs' three theories of recovery.

■ Firstly, plaintiffs contend that the defendant has violated one or more of the rules of the various stock exchanges. The law is clear that such violation does not give rise to implied federal civil liability on the facts herein. Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir.) cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1960). Judge Friendly, writing for a unanimous court in that landmark case, held that although the rules of security exchanges impose a duty upon the members not to engage in activities which are in contravention of its rules, for which the exchange or association can impose disciplinary sanctions, violation thereof by a member does not give rise to implied federal civil liability. *See also*, Hecht v. Harris, Upham & Co., 430 F.2d 1202, 1209 (9th Cir. 1970); Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir. 1969); Mercury Investment Co. v. A. G. Edwards & Sons, 295 F.Supp. 1160 (S. D. Texas 1969); Irving Weis & Co. v. Offenberger, 31 Misc.2d 628, 220 N.Y.S. 2d 1001 (1961).

■ Secondly, plaintiffs contend they are entitled to damages on the basis of a Rule 10b–5 violation of the Securities Exchange Act. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. That contention is not well founded, as there is no indication that the defendant was motivated by a fraudulent intent or scienter in not enforcing the margin maintenance requirements. Shemtob v. Shearson, 448 F.2d 442 (2d Cir. 1971); Matheson v. White Weld & Co., 53 F.R.D. 450 (S.D. N.Y.1971). It is insufficient to allege mere negligence. Globus v. Law Research Service, Inc., 418 F.2d 1276, 1290–1291 (2d Cir. 1969); SEC v. Texas Gulf Sulphur, 401 F.2d 833, 867–68

(2d Cir. 1968); Colonial Realty Corp. v. Bache & Co., *supra.*

Thirdly, plaintiffs contend that the defendant has violated a provision of the Securities Exchange Act. For the plaintiffs to be successful on that theory, the following two issues must be resolved in the affirmative:

(1) Whether the defendant has violated Title 15 Section 78g(c) of the Securities Exchange Act and the regulations promulgated thereunder by the Federal Reserve System; and

(2) Whether said violation gives rise to implied federal civil liability.

■ The landmark case of *Colonial* has been cited as standing for the proposition that notwithstanding there being a violation of the Securities Exchange Act with regard to a securities broker not complying with the margin requirements, the customer is not entitled to relief, as there is no implied federal civil liability. That proposition is purportedly based upon the premise that Congress knows how to create civil liability on behalf of the person aggrieved when it wants to—*see e. g.* Economic Stabilization Act, Pub.L.No. 92–210 § 210 (December 22, 1971); Equal Employment Opportunities Act, 42 U.S.C. § 2000e–5; Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412—but did not expressly create it in this instance, and thus there is an implication that Congress determined that affording persons who are aggrieved civil liability is not necessary for executing the statutory purpose. The aforementioned conclusion is incorrect on the basis of prior implication of federal civil liability under the very Act in question. See Rule 10b–5 and the case law construction thereof. Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y.1965); J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Moscarelli v. A. L. Stamm, 288 F.Supp. 453 (E.D. N.Y.1968); Deckert v. Independence Shares, 311 U.S. 282, 288, 61 S.Ct. 229, 85 L.Ed. 189 (1940). Furthermore, and

most importantly, a reading of *Colonial* does not support the proposition that there cannot be implied federal civil liability when a customer sues a securities broker for alleged violations of the Securities Exchange Act, as there was not a violation of the Securities Exchange Act in that case.

Plaintiff's alleged cause of action in *Colonial* arose when the securities broker sold the securities in plaintiff's margin account during a stock market dip. Plaintiff did not contend that the securities broker should have sold the securities earlier and was required to do so by the margin requirements established under the Securities Exchange Act. Rather, plaintiff's theory of recovery was based upon the allegation that it suffered losses as a result of defendant's selling the securities in its margin account in EXCESS of the minimum requirements of the New York Stock Exchange, when defendant entered into an oral agreement that it would not require a margin in excess of the minimum requirements of the New York Stock Exchange, notwithstanding the carte blanche provisions of the standard margin agreement entered into between the parties, according to which they agree to "maintain such margins as you [securities broker] may from time to time require, upon my accounts, and promptly meet all margin calls."

Since the first issue in Colonial— whether there was a violation of a provision of the Securities Exchange Act— was resolved in the negative, there was no need to go on to the second issue— whether a violation of the Securities Exchange Act gives rise to implied federal civil liability. Thus, the cases citing *Colonial* as barring a federal civil liability action against a securities broker for a violation of the margin requirement of the Securities Exchange Act are wrong in relying upon Colonial for that proposition. *See e. g.* Irving Weis & Co. v. Offenberger, *supra.* At best, they are relying upon dictum.

■ In the present posture of the case at bar, plaintiffs have demonstrated a violation of the Securities Exchange Act, 15 U.S.C. § 78g(c). In resolving the question of whether plaintiffs have an implied federal civil liability action against the security brokerage firm in question, *Colonial* is not authority to the contrary.[1] The Second Circuit, with Judge Friendly dissenting, in Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. 1970), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), with Justices Black, Douglas and Blackmun dissenting, held that *a customer who purchases securities through a broker who does not comply with the margin requirements of the Securities Exchange Act has an implied federal civil action for damages.* The *Pearlstein* Court stated that the fact that the federal margin requirements prohibit a broker from extending undue credit, and do not prohibit customers from accepting such credit, indicates that Congress placed the responsibility for observing margins upon the broker.

■ Although the main purpose of the margin requirement provision of the Securities Exchange Act was to protect the overall economy from excessive speculation by reducing the amount of credit resources which could be directed by speculation into the stock market, an incidental purpose was the protection of the individual investor. Pearlstein v. Scudder & German, *supra* at 1140. The House Report noted that "[p]rotection of the small speculator by making it impossible for him to spread himself too thinly . . . will be achieved as a by-product of the main purpose." H.R. Rep.No. 1383, 73d Cong., 2d Sess. 8 (1934). The report of the Senate Bank-

---

1. Neither is Rubin v. Salomon, 136 Misc. 527, 241 N.Y.S. 495, 496–97 (1930), which was cited by the defendant, as it was decided prior to the enactment of the Securities Exchange Act, nor is Good- body & Co. v. Penjaska, 8 Mich.App. 64, 153 N.W.2d 665 (1967), which was brought upon a common law claim and not under a purported violation of the Federal Securities Exchange Act.

ing and Currency Committee includes as one of the intended effects of the margin provisions the protection of the margin purchaser by making it impossible for him to buy securities on too thin a margin. S.Rep.No. 1455, 73d Cong., 2d Sess. 11 (1934). *See also* Zatz v. Hertz, Neumark & Warner, 262 F.Supp. 928 (S.D.N.Y.1966); Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (D. Mass.1949); Surgil v. Kidder, Peabody & Co., 63 Misc.2d 473, 311 N.Y.S.2d 157 (1970); Myer v. Shields & Co., 25 A.D. 2d 126, 267 N.Y.S.2d 872 (1966).

There are numerous cases, which constitute the weight of authority, that recognize private actions by investors as a highly effective means of protecting the economy as a whole from margin violations by security brokers. Pearlstein v. Scudder & German, *supra*; Junger v. Hertz, Neumark & Warner, 426 F.2d 805 (2d Cir. 1970); Smith v. Bear, 237 F.2d 79, 87–88 (2d Cir. 1956); Goldman v. Bank of Commonwealth, 332 F.Supp. 699 (E.D.Mich.1971); Serzyzko v. Chase Manhattan Bank, 290 F.Supp. 74 (S.D. N.Y.1968), aff'd, 409 F.2d 1360 (2d Cir.), cert. denied, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969); Moscarelli v. A. L. Stamm, *supra*; Hecht v. Harris, Upham & Co., *supra*; Glickman v. Schweickart & Co., 242 F.Supp. 670 (S. D.N.Y.1965); Cooper v. North Jersey Trust Co., 226 F.Supp. 972 (S.D.N.Y. 1964); Warshow v. H. Hentz & Co., 199 F.Supp. 581 (S.D.N.Y.1961); Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N. Y.1961); Appel v. Levine, 85 F.Supp. 240 (S.D.N.Y.1948); Remar v. Clayton Securities Corp., *supra*; Surgil v. Kidder, Peabody & Co., *supra*; Fisch v. Banks, 58 Misc.2d 839, 296 N.Y.S.2d 830 (1969); Mitchell v. Bache & Co., 52 Misc.2d 985, 277 N.Y.S.2d 580 (1966); Myer v. Shields & Co., *supra*. See also Restatement (Second) of Torts § 286(c) (1965), which provides that where there is a violation of a prohibitory statute that has caused injury to an individual, the latter has a right of action if one of the purposes of the statute was to protect individual interests. Barnett v.

Anaconda Co., *supra*. In the case at bar, there is a complete diversity of citizenship, which is another of plaintiffs' alternative theories of recovery.

It is the duty of federal courts to execute the Congressional purpose underlying the securities laws by providing remedies as are necessary. Moscarelli v. A. L. Stamm, *supra*. The potential liability of the securities broker for having violated the margin requirement of the Securities Exchange Act is not absolute but is subject to the traditional tort concepts of causation, contributory negligence, having been instigated by the customer, or wilful participation in the violations, which will preclude recovery. Junger v. Hertz, Neumark & Warner, *supra*; Aubin v. H. Hentz & Co., 303 F.Supp. 1119 (S.D.Fla., 1969); Moscarelli v. A. L. Stamm, *supra*. However, in a motion for summary judgment by the defendant, this Court cannot conclude that the mere participation by the customer is a per se bar to his recovery.

On the basis of the foregoing, it is the conclusion of this Court that in the present posture of this suit, the Court cannot hold that there is no issue as to a material fact, nor that as a matter of law the defendant is entitled to summary judgment. Therefore, defendant's motion will be denied, and an order will be entered in accordance with this memorandum.

## On Motion for Reconsideration

This cause came to be heard on motion for reconsideration by the plaintiffs of the Court's ruling of May 17, 1972 in granting a partial summary judgment in favor of the defendants for the reason that the Court has misapplied the law concerning Rule 10b–5 of the Securities Exchange Act, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5; and for the reason that contributory negligence is not properly regarded as a defense to plaintiffs' alleged violation of 15 U.S.C. § 78g (c) of the Securities Exchange Act; and upon the motion of defendant for reconsideration of the Court's conclusion

that defendant's motion for summary judgment should be denied, as the Court misapplied 15 U.S.C. § 78g(c) in concluding that it is applicable to maintenance margin, when it is only applicable to initial margin.

With regard to plaintiffs' motion for reconsideration on the basis that this Court has misapplied the law concerning Rule 10b–5 of the Securities Exchange Act and that contributory negligence is not properly a defense, this Court has elected to stand on its prior ruling. Once the facts of this case are examined and Rule 10b–5 applied to them, this Court can reach but one conclusion that plaintiffs are not entitled to any damages.

 Turning to defendants' motion for reconsideration, it is the conclusion of this Court that the motion is well taken. During the time period in question, June 8, 1970 to August 10, 1970, there were no transactions conducted in any of the accounts governed by Regulation T. 12 C.F.R. § 220. The withdrawal of $3,000.00 from the special loan account of Hazel Golob on July 22, 1970 was not a violation of Regulation T, as it was not a general account within the meaning of that Regulation. *See* 12 C.F.R. §§ 220.3(a), 220.4. A special account is one opened for purposes other than buying and selling securities. There is a requirement that the customer sign a letter to the effect that he or she will not use the special account to buy or sell securities. *See* 12 C.F.R. § 220.7(c), which plaintiffs complied with. Accordingly, there was no violation of Regulation T.

Regulation T applies to initial margin requirements only. *See* Solomon & Hart, Recent Developments in the Regulation of Securities Credit, 20 J.Public L. 167, 172–173 (1971), which was written by the Director and Assistant Director, respectively, in the Division of Supervision and Regulation, Board of Governors of the Federal Reserve Board. Section 220.7(b) provides in part:

> Except as otherwise specifically forbidden by this part, any credit initially extended without violation of this part may be maintained regardless of (1) reductions in the customer's equity resulting in market prices . . . .

12 C.F.R. § 220.7(b).

Accordingly, defendants' motion for reconsideration of its motion for summary judgment is well taken. It is the conclusion of the Court that there is no genuine issue as to any material fact as to whether the defendants have violated Regulation T, and as a matter of law, the defendants are entitled to the entry of summary judgment.

An order will be entered in accordance with this opinion.