**Walter K. GEYER and Jean L. Geyer, Plaintiffs,**

v.

**PAINE, WEBBER, JACKSON & CURTIS, INC., a Delaware Corporation, Defendant.**

**No. C74–176.**

United States District Court,
D. Wyoming.

Feb. 19, 1975.

James P. Horiskey, Rooney & Horiskey, Cheyenne, Wyo., and Paul F. Hultin, Lohf & Barnhill, P. C., Denver, Colo., for plaintiffs.

William J. Thomson, Guy, Williams & White, Cheyenne, Wyo., and Roger Goldburg, Weinshienk, Miller, Goldburg & Borus, Denver, Colo., for defendant.

## MEMORANDUM OPINION

KERR, District Judge.

The defendant has filed a motion to dismiss the third and fourth claims of plaintiffs' complaint. The issue before the Court is whether claims for relief are stated where the claims seek to establish liability on the part of the defendant-broker based upon alleged violations of rules adopted by the New York Stock Exchange and the National Association of Securities Dealers. The rules which allegedly have been violated are Rule 405 of the New York Stock Exchange, commonly known as the "Know Your Customer Rule," and Article III, Section 2, of the Rules of the National

Association of Securities Dealers, often referred to as the "Suitability Rule."

As this involves a motion to dismiss, the complaint must be viewed in the light most favorable to plaintiffs. See Parkinson v. California Co., 233 F.2d 432 (10th Cir. 1956). All reasonable doubts should be resolved in favor of the plaintiff and in favor of the sufficiency of the complaint. See Porter v. Karavas, 157 F.2d 984 (10th Cir. 1946). The Court, looking at the complaint liberally, must take the averments of the complaint, together with all reasonable inferences therefrom, as true. See Wilshire Oil Co. v. Riffe, 409 F.2d 1277 (10th Cir. 1969). A complaint should be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Wilshire Oil Co. v. Riffe, 409 F.2d 1277, above.

Plaintiffs allege in their complaint that they purchased certain pass-through securities guaranteed by the Government National Mortgage Association in the face amount of $94,824.02, on ten per cent margin from the defendant. It is alleged that such purchases were made in reliance upon recommendations by a broker employed by the defendant in whom "plaintiffs reposed particular trust and confidence." Plaintiffs contend that defendant made "untrue statements of material facts" and other statements which were in fact misleading. In particular it is alleged that defendant "falsely informed" plaintiffs that the securities could not be purchased in face amounts of less than approximately $100,000, when in fact such securities could be purchased in face amounts of $25,000. It is further alleged that defendant recommended investment in such speculative securities despite knowing plaintiffs' desire to protect their principal. Plaintiffs further allege that defendant falsely informed plaintiffs as to the effect that changes in the prime interest rate would have upon their need to invest more capital.

The complaint also sets forth the allegation that defendant failed to keep plaintiffs informed, as it had promised, regarding current market values of the securities.

The New York Stock Exchange, in its supervisory role, has adopted the previously referred-to Rule 405, pursuant to Sections 6 and 19 of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78f and 78s (1964). Rule 405, in pertinent part, provides:

"Every member organization is required through a general partner, a principal executive officer or an officer who is a holder of voting stock to:

(1) use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization . . .

(2) supervise diligently all accounts handled by registered representatives of the organization;

(3) specifically approve the opening of an account prior to or promptly after the completion of any transaction. . . . The member, general partner, officer or designated person approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval. . . ."

Plaintiffs' fourth claim for relief arises under Article III, § 2, of the Rules of Fair Practice adopted by the National Association of Securities Dealers. This "Suitability Rule" dictates:

"In recommending to a customer the purchase, sale or exchange of any security a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs."

Section 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f (1964), pro-

vides that no securities exchange may become registered with the Commission unless it adopts certain enumerated rules. These rules must provide for the "expulsion, suspension, or disciplining of a member for conduct or proceeding inconsistent with just and equitable principles of trade. . . ." 15 U.S.C. § 78f(b) (1964). It is by this authority that Rule 405, mentioned previously, was enacted by the New York Stock Exchange. Similar authority was granted to national associations of security dealers by 15 U.S.C. §§ 78o–3 and 78o–3(b)(4)(A) (1964), and made a prerequisite to registration.

By virtue of 15 U.S.C. § 78aa (1970), "The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all *suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.*" The Court emphasizes that part of the statute crucial to the opinions expressed herein. While it may reasonably be subject to dispute as to whether the rules here alleged to have been violated are "rules and regulations" under § 78aa, see Lowenfels, Implied Liabilities Based Upon Stock Exchange Rules, 66 Colum.L.Rev. 12 (1966), there is nothing inconsistent with this jurisdictional provision in holding that Rule 405 or Article III, Section 2, the "Suitability Rule," might, in the proper circumstances, be actionable as "duties created by this chapter," inasmuch as these rules were created by the direct command of statute and as a precondition to registration, above; see Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir. 1969). These rules are in harmony with the general purposes of the Securities Exchange Act; those being the complete, effective protection of the investing public, and the prevention of inequitable and unfair practices in the purchase and sale of securities.

With this foundation, the issue is framed whether an action might lie by an investor against a private party, on the theory that an implied liability is present for alleged violations of a stock exchange's, or a securities dealers association's rules. This Court finds that such an action, as qualified hereinafter, is maintainable.

One of the early cases to confront the general issue of implied liabilities, although not involving the particular issues herein, was Baird v. Franklin, 141 F.2d 238 (2d Cir. 1944). The court there sustained an action by investors against the New York Stock Exchange. It did not reach the issue of whether an action could be brought against a party other than the exchange. A view evident throughout the opinion, that failure to provide for a private cause of action was no bar to imposition of liability, was crystallized by Judge Clark in a concurring opinion wherein he stated:

"The fact that the statute provides no machinery or procedure by which the individual right of action can proceed is immaterial. It is well established that members of a class for whose protection a statutory duty is created may sue for injuries resulting from its breach and that the common law will supply a remedy if the statute gives none." 141 F.2d 238 at 245.

This flexible view was reiterated by the Supreme Court in J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), wherein the Court recognized that the judicial recognition and enforcement of a private remedy not expressly afforded by the Securities Exchange Act was predicated on the duty of the courts "to make effective the congressional purpose" represented in "the statute and the federal policy which it has adopted." In holding that private suits were impliedly authorized, the Supreme Court declared, "Private enforcement of the proxy rules [of the Securi-

ties and Exchange Commission] provides a necessary supplement . . . ." 377 U.S. 426 at 432, 84 S.Ct. at 1560. It is the duty of the federal courts to execute the Congressional purpose underlying the securities laws by providing remedies as are necessary. See Kerbs v. Fall River Industries, Inc., 502 F.2d 731 (10th Cir. 1974).

The concept of implied remedies is not a foreign concept to the law of securities. It is now settled in almost every circuit that an implied private remedy may be granted for damages resulting from the violations of Section 10(b) and Rule 10b–5, 15 U.S.C. § 78j(b) (1964). See, e. g. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); Speed v. Transmerica Corp., 235 F.2d 369 (3d Cir. 1956); Boone v. Baugh, 308 F.2d 711 (8th Cir. 1962); Estate Counselling Service, Inc., v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 303 F.2d 527 (10th Cir. 1962). Some of the principles applied in these cases are generally applicable to the instant situation; i. e., that violation of a legislative enactment by doing a prohibited act or failing to do a required act may render a party liable where the intent of the act is to afford protection to the interest of another and that interest is in fact invaded. It is in the light of these policy guidelines that the cases must be analyzed.

■ Defendant, in support of its motion to dismiss, unequivocally declares, "It is well settled that infractions of Rule 405 and/or the suitability rule do not furnish a basis upon which a customer may establish civil liability of his broker for damages sustained in securities transactions. Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir. 1966)." Reliance upon such a proposition has been declared as being misplaced. See Golob v. Nauman Vandervoort, Inc., 353 F.Supp. 1264, 1267 (N. D.Ohio 1972). See also Mercury Investment Co. v. A. G. Edwards & Sons, 295 F.Supp. 1160, 1162 (S.D.Tex.1969) wherein the court said, "Colonial did not issue a blanket holding that such dealer rules could never give rise to federal civil liability." It is essential that it be noted that neither Rule 405 nor the suitability rule were involved in the Colonial case. That case involved a complaint alleging violations of rules of the exchange and the national association of securities dealers other than those here involved. The complaint was based on violation of the very essence of the rules, that defendant had acted in a manner "inconsistent with just and equitable principles of trade." See 15 U.S.C. § 78o–3(b)(8) (1964). The Court did not simply declare that an implied liability could never be found to rest upon violations of such rules. What the Court said was:

"What emerges is that whether the courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law." 358 F.2d 178 at 182.

The Court found that the phrase "inconsistent with just and equitable principles of trade" was amorphous to such a degree as not to be properly actionable. A principle with such vague and uncertain contours, it was felt, could not have been intended to give rise to a legal claim for what might merely be unethical behavior. Such a view is here not criticized nor contradicted for those particular issues are not before the Court. The Colonial case did dictate the need, with which the Court agrees, that the functions and reasons behind the rules alleged to have been violated in a particu-

lar case must be considered in determining whether liability may properly be implied.

In Ocrant v. Dean Witter & Company, Inc., 502 F.2d 854, 858 (10th Cir. 1974), a unanimous court, through Judge Seth, although finding that the facts did not bring plaintiff within the rule alleged to have been violated, declared:

> "[W]e recognize that in an appropriate case, violations of exchange rules designed for customer protection might give rise to a private cause of action (see, e. g. Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir.), cert. denied 396 U.S. 838, [90 S.Ct. 98, 24 L.Ed.2d 88.] (1969)."

In Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, 410 F.2d 135, above, Rule 405 *was* alleged to have been violated. The Court found that Rule 405, while not being per se actionable, could be the basis for an action against a broker, for the rule was not simply a "house-keeping rule" but was designed "for the direct protection of investors." 410 F.2d 135 at 142. Such "house-keeping rules" abound—composition and election of the Board of Governors, transfers of memberships, dues and other fees, registration of floor employees, and back-office procedures [1]—and, generally speaking, should not engender private actions by the investing public. Rules promulgated by exchanges and securities dealers associations for the direct protection of the investing public should, on the other hand, give rise to private actions. Under such rules, the investing public is, in a very real sense, a third party beneficiary of the duties imposed upon those required to adhere to those rules. The "house-keeping rules" confer no such status on the investing public. The rules which are the subject of discussion here are not broad, generalized "catch-alls," as in Colonial Realty v. Bache & Co., 358 F.2d 178, above; rather, they are rules which are quite precise in comparison and have among their purposes the protection of the investing public. See Starkman v. Seroussi, 377 F.Supp. 518 (S.D.N.Y. 1974) holding that Rule 405 may give rise to a claim; and Buttrey, above. The arguments used there and in this opinion apply with equal force to the "Suitability Rule." Both rules play integral parts in the protection of the investing public and are explicit in the duties they create. The protection of the investing public is enhanced, not diminished, by permitting a private action to be based on these rules; and such actions, where based on such explicit rules, further the purposes of these Acts. They do not merely vaguely adjure the broker to behave himself. See Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 at 181–82, above.

The Security Acts, although designed to protect the investor, are essentially directed at fraud. In holding that the rules in dispute are actionable, the Court does not mean to imply that mere negligence or errors of judgment will suffice to sustain an action under such rules. Plaintiffs specifically allege that defendant made untrue and misleading statements; falsely informed plaintiffs as to their liabilities; and misled them in their attempts to achieve their goal of financial security by inducing investment in such speculative securities. In light of the present posture of the case, such allegations, drawing all reasonable inferences therefrom, might well be "tantamount to fraud" for which liability might lie. Only further evidence can determine whether fraud or something tantamount to fraud is involved. "Until this case is actually tried, it will be impossible to ascertain whether defendant has violated Rule 405 [and Article III, Section 2], and if so, whether the violations justify the imposition of liability." Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 at 143, above.

For the foregoing reasons, the motion to dismiss will be overruled.

---

1. See N. Y. Stock Exch. Const. art. II et seq., CCH N.Y. Stock Exch. Guide ¶¶ 1051 et seq.