OPINION OF THE COURT
Martha K. Zelman, J.
the issue
Does a cause of action for wrongful discharge of an "at-will” employee exist under Penal Law § 215.14? That central issue is apparently one of first impression and comes before this court by way of a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7).
*298 THE FACTS
Plaintiff, Barbara Buchwalter, commenced an action by service of a summons and complaint received by the defendant, Dayton Management Corp., on November 20, 1987. The complaint states that the plaintiff, then an employee of the defendant, received a subpoena requiring her to appear as a witness in New York City’s Criminal Court on December 3, 1986. As a result of her compliance with that subpoena, and her resultant absence from work, it is alleged that the plaintiff was terminated from her employment by the defendant. It is further alleged that the termination was wrongful and in violation of the laws of New York.
The plaintiff had commenced employment as a secretary and office assistant on or about May 12, 1986. She did not work under a contract nor were the terms of her employment set by an employer’s manual. In effect, she was an "at-will” employee.
Before answering plaintiff’s complaint, the defendant moves to dismiss plaintiff’s action which action seeks, inter alia, compensatory and punitive damages totaling $100,000. Defendant’s motion, based on CPLR 3211 (a) (7), states that no authority exists in New York permitting this action, including the use of Penal Law § 215.14. Even if a cause of action existed, the defendant states it was not properly pleaded. The plaintiff’s affidavit in opposition states that the cause of action is predicated solely upon Penal Law § 215.14, and that a cause of action is properly pleaded. This court agrees with the plaintiff that a cause of action exists under Penal Law § 215.14, but does not agree with the plaintiff that such cause of action was properly pleaded.
THE LAW
In New York it is well settled that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party (Martin v New York Life Ins. Co., 148 NY 117, 121).” (Sabetay v Sterling Drug, 69 NY2d 329, 333 [1987].) Unlike some other jurisdictions which have tempered their harsh policy, New York has refused to recognize a common-law tort theory of liability based on abusive or wrongful discharge of an "at-will” employee. It has been held that any such change in New York’s policy should come from the *299 Legislature. (Murphy v American Home Prods. Corp., 58 NY2d 293 [1983]; Sabetay v Sterling Drug, supra.)
"The Legislature has infinitely greater resources and procedural means to discern the public will, to examine the variety of pertinent considerations, to elicit the views of the various segments of the community that would be directly affected and in any event critically interested, and to investigate and anticipate the impact of imposition of such liability. Standards should doubtless be established applicable to the multifarious types of employment and the various circumstances of discharge. If the rule of nonliability for termination of at-will employment is to be tempered, it should be accomplished through a principled statutory scheme, adopted after opportunity for public ventilation, rather than in consequence of judicial resolution of the partisan arguments of individual adversarial litigants.” (Murphy v American Home Prods. Corp., supra, at 302.)
"Indeed, the Legislature has responded to this appropriate sensitivity by enacting numerous protections against abusive discharge and by prohibiting employers from discharging at-will employees for reasons contrary to public policy”, (Sabetay v Sterling Drug, supra, at 337.) Both Sabetay and Murphy (supra) cite several examples of statutes specifically so enacted to protect employees against wrongful discharge, including those based on discharge for reasons of sex, race, "whistle-blowing”, or for serving as a juror. The last-mentioned reason is found in Judiciary Law § 519.
It is this court’s belief that when the Legislature enacted Penal Law § 215.14 it did so with the intent to grant a civil remedy to the discharged employee. Penal Law § 215.14, as enacted and amended (1982,1983, 1985), reads as follows:
"Employer unlawfully penalizing witness
"Any person who is the victim of a crime upon which an accusatory instrument is based or is subpoenaed to attend a criminal action as a witness pursuant to article six hundred ten of the criminal procedure law and who notifies his employer of his intent to appear as a witness prior to the day of his attendance, shall not on account of his absence from employment by reason of such witness service be subject to discharge or penalty except as hereinafter provided. Upon request of the employer, the party who sought the testimony shall provide verification of the employee’s service as a witness. An employer may, however, withhold wages of any such *300 employee attending a criminal action as a witness during the period of such attendance. The subjection of an employee to discharge or penalty on account of his absence from employment by reason of his required attendance as a witness at a criminal action shall constitute a class B misdemeanor.”
Section 215.14 is found in the Penal Law and provides a penal sanction. Specifically, though, no civil remedy is stated. In General Teleradio v Manuti (284 App Div 400, 404 [1st Dept 1954]), the court stated "[t]he rule is well settled that where a criminal or penal statute imposes a duty but furnishes no civil remedy to the protected class, a breach of that duty .gives rise to a cause of action in favor of the latter class.” (See also, Case Co. v Borak, 377 US 426 [1964]; Barnes v Peat, Marwick, Mitchell & Co., 69 Misc 2d 1068 [Sup Ct, NY County 1972].)
In Burns Jackson Miller Summit & Spitzer v Lindner (59 NY2d 314, 325 [1983]), the court said how legislative intent is to be determined by stating the following: "Absent explicit legislative direction * * * it is for the courts to determine, in light of those provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which legislative familiarity is presumed, what the Legislature intended * * * Whether a private cause of action was intended will turn in the first instance on whether the plaintiff is 'one of the class for whose especial benefit the statute was enacted’ * * * But the inquiry does not * * * end there, for to do so would consider but one of the factors involved in the Legislature’s determination. Important also are what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme”.
An examination of the legislative history of the statute indicates that it was introduced at the initiative of the Office of the District Attorney of Queens County. The District Attorney realized a number of cases were being dismissed for failure to prosecute, i.e., the failure of witnesses to appear. However, it is also apparent that another purpose of the statute was to grant a witness in a criminal proceeding the right to be absent from employment during such witness’ appearance without fedr of reprisal. (See, In Support of Legislation — Assembly Bill No. 5809.) Clearly, then, at least one of *301 the purposes of the law was to protect the witness, the protected class spoken of in both General Teleradio (supra) and in Burns Jackson (supra). That the fact that such was but one of the purposes of the statute as opposed to the sole purpose does not require a different result. See, Myer v Shields & Co. (25 AD2d 126, 127-128 [1st Dept 1966]), where the court stated, " 'It is now well established that where one violates a legislative enactment by doing a prohibited act and thereby causes injury to another, the latter has a civil right of action if one of the purposes of the statute was to protect interests similar to his own. 2 Restatement, Torts § 286 (1934).’ ” (Emphasis supplied.) (Cf, CPC Inti, v McKesson Corp., 120 AD2d 221, mod 70 NY2d 268 [1987].) It is therefore clear that the subpoenaed witness is a person in the "protected class”, and accordingly has a civil remedy for a penal violation.
It is to be pointed out that initially the provisions of Penal Law § 215.14 were intended to be added to Judiciary Law § 519. The latter statute is substantially similar to Penal Law § 215.14, and only differs in that, it provides for a criminal contempt penalty for anyone who discharges an employee for his or her attendance as a juror. As was stated earlier, the courts in both Sabetay v Sterling Drug (supra) and Murphy v American Home Prods. Corp. (supra) specifically referred to Judiciary Law § 519 as an example of one exception which was created to establish a cause of action in favor of a plaintiff. It is also clear that Penal Law § 215.14 was initially to be added to Judiciary Law § 519. What is less clear, as is pointed out in the Practice Commentaries to section 215.14, is why this statute eventually found its way into the Penal Law instead of remaining in the Judiciary Law. In any event, this court sees no reason for a distinction in treatment between these two statutes which both forbid punishment for obeying a governmental command. Both statutes, in addition, were enacted to prevent a person from having to choose between losing one’s job as a result of some public duty or being held accountable for failure to appear by some governmental agency. Therefore, for the reasons already stated, this court finds that the Legislature intended a cause of action to exist for wrongful termination pursuant to Penal Law § 215.14.
Unfortunately for the plaintiff, however, all elements of the statute needed to establish a cause of action under Penal Law § 215.14 were not pleaded. In addition to alleging a wrongful discharge, the statute states it is necessary for the employee to have notified the employer of the employee’s intent to *302 appear as a witness prior to the time of attendance. The plaintiff employee has not so alleged.
This court is not unmindful that pleadings are to be liberally construed (Guggenheimer v Ginzburg, 43 NY2d 268 [1977]; Foley v D’Agostino, 21 AD2d 60 [1st Dept 1964]; CPLR 3013), or that the following is stated in the Practice Commentaries to CPLR 3013: "Under the CPLR, if a cause of action can be spelled out from the four corners of the pleading, a cause of action is stated and no motion lies under Rule 3211 (a) (7). The pleading can be pathetically drawn; it can reek of miserable draftsmanship. That is not the inquiry on a motion under Rule 3211 (a) (7). We want only to know whether it states a cause of action. If it does, a Rule 3211 (a) (7) motion does not lie and the pleading is immune from it.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3013:6, at 614.) "When a motion is made under 3211 (a) (7) to dismiss a pleading for failure to state a cause of action, it has been seen that the CPLR will ask only whether from the total verbiage of that pleading any kind of cause of action known to our law can be discerned. If it can be, the motion is denied; and it is denied whether the pleadings’ language is wretched or poetic.” (Siegel, op. cit., CPLR C3013:7, at 615.)
Even with liberal interpretation, however, not having pleaded all the essential elements . of the cause of action requires that the complaint be dismissed. The plaintiff, however, is granted leave to properly replead the cause of action.