Nichols & Co., Plaintiff, *v.* Columbus Credit Corporation, Defendant.

Supreme Court, Special Term, New York County, November 10, 1953.

*Ulrich Schweitzer* for plaintiff.

*Melvin W. Agrest* for defendant.

Walter, J. Plaintiff is a partnership engaged in business as a commodity broker on the New York Cotton Exchange. Between October 24, 1951, and February 28, 1952, defendant gave plaintiff various orders to buy and sell for defendant's

account a number of future contracts for wool and wool tops, the meaning of which is that defendant told plaintiff to make for defendant's account agreements by which defendant agreed to buy wool and wool tops at future dates and other agreements by which defendant agreed to sell wool and wool tops at future dates. By giving such orders defendant impliedly agreed to perform such agreements as plaintiff made pursuant to such orders, and also to pay plaintiff such amounts as plaintiff expended or became obligated to expend in performing such agreements for defendant's account, and the regularly established commissions for plaintiff's services in executing defendant's orders.

Performance of such agreements as were made in execution of defendant's orders resulted in debits of $16,010 in defendant's account with plaintiff and credits of $7,386, an excess of $8,624 of debits over credits; and for its services plaintiff became entitled to commissions of $352. In the course of those dealings defendant deposited with plaintiff $4,500 to margin its account. The $8,624 excess of debits over credits, plus the commissions of $352, and less the margin deposited, leaves defendant indebted to plaintiff in the sum of $4,476 and plaintiff sues to recover that balance.

Defendant pleads two counterclaims. The first is that plaintiff violated its contract with defendant (a) by permitting defendant's account to remain under-margined in violation of rule 30(a) of the Cotton Exchange, (b) by extending credit to defendant in violation of rule 30, (c) by being connected with and acting as broker for a corporation engaged in dealing, distributing and manufacturing wool products for its own account, and (d) by failing to act honestly, diligently and carefully in connection with the transactions of defendant; and thereby caused damage to defendant.

The second counterclaim is that plaintiff advised defendant to sell when a corporation in which plaintiff was interested was buying, and advised defendant to buy when that corporation was selling, and otherwise damaged defendant by giving it bad market advice in bad faith.

Rule 30(a) provides that when a customer's margins are one half exhausted they must be restored, and if the customer fails to restore, the account shall be closed, or so much thereof as will leave any remaining unliquidated contracts fully margined; and it is here conceded that defendant's account was under-margined to the following extent on the following dates:

| Date | | Margin Needed | Margin Deposited |
|---|---|---|---|
| February | 6 | $4,536 | $4,500 |
| | 7 | 4,792 | ,, |
| | 8 | 5,222 | ,, |
| | 11 | 5,787 | ,, |
| | 13 | 5,727 | ,, |
| | 14 | 6,129 | ,, |
| | 15 | 6,627 | ,, |
| | 18 | 7,653 | ,, |
| | 19 | 8,937 | ,, |
| | 20 | 7,823 | ,, |
| | 21 | 8,213 | ,, |
| | 25 | 8,711 | ,, |
| | 26 | 9,221 | ,, |

Assuming *arguendo* that that under-margining was such that the rule required restoration and a closing of the account upon defendant's failure to restore, and also assuming that plaintiff failed to take such steps as it reasonably could take in order to get defendant to restore the impaired margin, I am of the opinion that a violation of the rule by plaintiff by failing to close the account promptly upon defendant's failure to restore the margin does not entitle defendant to recover of plaintiff such loss as defendant may have sustained by reason of further market fluctuations after the account would have been closed if the rule had been complied with.

Not every violation of even a statutory command or prohibition gives rise to civil liability to one harmed by the violation or carries with it as a penalty an inability to enforce civil rights arising from acts which would have been lawful except for the statute; and a fortiori mere violation of a rule of an exchange does not give rise to such civil liability or entail inability to enforce civil rights.

*Marrow Mfg. Corp.* v. *Eitinger* (296 N. Y. 760), *Marrow Mfg. Corp.* v. *Eitinger Bead Co.* (296 N. Y. 762), *Marrow Mfg. Corp.* v. *Walco Bead Co.* (296 N. Y. 764), holding that a seller who has charged more than the ceiling prices authorized by a Federal statute is not liable in a suit by the buyer for a recovery of the excess price so paid.

*Raymond Concrete Pile Co.* v. *Federation Bank & Trust Co.* (288 N. Y. 452, 462), holding that a statute which declared that certain funds were trust funds to be applied only as directed by the statute did not give to a beneficiary of the trust a civil cause of action against one who had applied such funds to his own use.

*Manufacturer's Trust Co.* v. *United States Mtge. & Trust Co.* (244 N. Y. 550), holding that a statute forbidding executors to mingle estate funds with their own does not give a cause of action against a bank which permitted an executor to mingle estate funds with his own.

*Rosasco Creameries* v. *Cohen* (276 N. Y. 274), holding that the failure of a milk dealer to obtain a license as required by a statute did not disable him from recovering the purchase price of milk sold by him.

*Mahar* v. *Harrington Park Villa Sites* (204 N. Y. 231), and *Fosdick* v. *Investors Syndicate* (266 N. Y. 130), holding that the failure of a foreign corporation to obtain a license declared by statute to be a prerequisite to its right to do business in this State does not give to one who has paid money to such corporation upon a contract made in this State a right to recover back the money so paid.

*Sajor* v. *Ampol* (275 N. Y. 125), holding that the failure of a dealer in securities to file in a public office a notice stating his name, business, and post office address, did not entitle one who purchased securities from such dealer to recover back money paid therefor.

*160 Realty Corp.* v. *162 Realty Corp.* (113 N. Y. S. 2d 618, affd. 280 App. Div. 762), holding that a landlord's violation of section 233 of the Real Property Law, by commingling with his own property a sum of money deposited with him as security for the tenant's performance of a lease does not of itself give the tenant the right to recover back the money so deposited. (See, also, *Bradford* v. *Durkee Marine Products Corp.*, 180 Misc. 1049.)

It has come to be recognized in recent years that margins in speculative accounts, although chiefly for the broker's protection as security for credit risks involved in acting for his customer, have a relation to public interest because requirements for large margins are at least believed to have some effect in checking speculation of a nature and extent deemed contrary to public interest. See Securities Exchange Act (U. S. Code, tit. 15, § 78a *et seq.*; Regulation T of Board of Governors of Federal Reserve System) and a broker who persistently and intentionally is too indulgent with a customer in respect of margins doubtless will find himself in trouble with public authorities charged with the duty of enforcing such statute and regulation or with the governing body of his exchange charged with the duty of enforcing the rules of such exchange; but it seems to me clear that the mere failure of a

broker to enforce, strictly and instantly, a margin requirement which the rules of his exchange entitle him to enforce against his customer does not give the customer a cause of action against the broker. The customer is the one who is speculating, not the broker. The customer has a strong financial incentive to watch market fluctuations, and there is no suggestion that he lacks the facilities for keeping himself advised as to them. It also is easy for the customer to protect himself by giving an order to buy or sell when the market reaches a stated point; and I hence think that the customer is the last person in the world who should be heard to complain that his broker has not been sufficiently exacting and stringent in requiring margin. I do not say that there cannot possibly be circumstances under which a broker could be held liable for damage actually shown to have resulted to the customer from the broker's failure to require margin. I merely say that mere failure to comply with the rule in question does not impose upon the broker absolute liability for subsequent market fluctuations.

Similarly, even if plaintiff violated a rule of the exchange by extending credit to defendant, that violation does not give the defendant a cause of action.

As to the other branches of both counterclaims it is sufficient to say that there is no evidence in support of them.

The counterclaims are accordingly dismissed and judgment is directed for plaintiff for $4,476 with interest from March 1, 1952, and costs. I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.