Murray H. Pearlman, J.
Plaintiff is a New York Stock Exchange brokerage firm. Defendant is its former customer, being sued in this action for a debit balance resulting from his trading, on margin, with the plaintiff. Plaintiff also seeks to recover the value Of 100 shares of stock registered in defendant’s name, which plaintiff sold to liquidate defendant’s account after the defendant refused to execute the required assignment or power of attorney to effectuate the transfer thereof to the purchaser. The amount and accuracy of defendant’s balance was conceded by him in his examination before trial and no question is raised by him with respect to the sale or the value of the aforesaid 100 shares of stock.
*629 Defendant resists plaintiff’s application for summary judgment on a defense and counterclaim which alleges that “During the period February 1959 until and including October 1960 the plaintiff deliberately and wilfully induced the defendant to engage in trades and transactions in securities with the plaintiff by extending to the defendant excessive credit for the purchasing and carrying of, and trading in, securities, in circumvention of the credit and margin requirements prescribed by the Board of Governors of the Federal Reserve System in Regulation T, of the Regulations of said Board, said regulation being promulgated pursuant to the Securities Exchange Act of 1934, and particularly to Section 7 and 8A of that Act; to the damage of the defendant in the sum of $2582.45.”
In addition to the pleadings and the moving and opposing affidavits of the parties to this action, the plaintiff has submitted its bill of particulars, attached to which is a complete transcript of defendant’s trading account with the plaintiff, and the transcript of defendant’s examination before trial, all of which were duly considered in the determination of the instant motion.
In challenging this motion for summary judgment, defendant has failed to convince the court that genuine issues of fact having merit have been raised. A shadowy semblance of an issue is not enough to defeat the motion. Rule 113 of the Rules of Civil Practice would serve no useful purpose if frivolous and transparently insufficient proofs such as have been brought forward here were held to create a triable issue. (Richard v. Credit Suisse, 242 N. Y. 346; Dwan v. Massarene, 199 App. Div. 872; Strasburger v. Rosenheim, 234 App. Div. 544; Gravenhorst v. Zimmerman, 236 N. Y. 22; Hanrog Distr. Corp. v. Hanioti, 10 Misc 2d 659.) As to the instant motion, the purpose of summary judgment procedure is to search out the evidentiary facts and determine the existence of an issue from them. Bald conclusory assertions, even if believable, are not enough. (Kramer v. Harris, 9 A D 2d 282.)
A reading of defendant’s affidavit fails to reveal any evidentiary or other facts establishing that plaintiff “ deliberately and wilfully ” induced the defendant to engage in trades with the plaintiff. See Regulations Bd. of Governors of Fed. Reserve System, § 32, regulation “ T ”.) On the contrary, the defendant’s examination before trial patently establishes the converse, for therein defendant has admitted that in his trading with the plaintiff all decisions for purchases and sales were effected by him voluntarily either on his own investigation or on the reliance on others than the plaintiff. Moreover, defendant’s affidavit, aside from the bald conclusion that he “ lost ” the sum of $2,- *630 582.45, fails to establish any proximate or causal relationship to the claimed violation of regulation “ T ”, or as to the manner in which defendant’s alleged damages were consequentially occasioned by or resulted therefrom. In short, there is no evidentiary showing that plaintiff’s alleged violation has caused any injury to the defendant.
Aside from the foregoing deficiencies and insufficiencies noted, it maybe well to state that not every violation of even a statutory command or prohibition gives rise to' civil liability to one harmed by the violation or carries with it as a penalty an inability to enforce civil rights arising from acts which would have been lawful except for the statute; and a fortiori mere violation of a rule of an exchange does not give rise to such civil liability or entail inability to enforce civil rights. (Marrow Mfg. Corp. v. Eitinger, 296 N. Y. 760; Raymond Concrete Pile Co. v. Federation Bank & Trust Co., 288 N. Y. 452, 462; Manufacturers Trust Co. v. United States Mtge. & Trust Co., 244 N. Y. 550; Rosasco Creameries v. Cohen, 276 N. Y. 274; Mahar v. Harrington Park Villa Sites, 204 N. Y. 231; Fosdick v. Investors Syndicate, 266 N. Y. 130; Sajor v. Ampol, 275 N. Y. 125; 160 Realty Corp. v. 162 Realty Corp., 113 N. Y. S. 2d 618, affd. 280 App. Div. 762; Bradford v. Durkee Marine Prods. Corp., 180 Misc. 1049.)
I am impressed by the logic, reason and arguments of Mr. Justice Walter in Nichols & Co. v. Columbus Credit Corp. (204 Misc. 848, 851-852, affd. 284 App. Div. 870.) The following is apposite to the case at bar: “ It has come to be recognized in recent years that margins in speculative accounts, although chiefly for the broker’s protection as security for credit risks involved in acting for his customer, have a relation to public interest because requirements for large margins are at least believed to have some effect in checking speculation of a nature and extent deemed contrary to public interest. See Securities Exchange Act (U. S. Code, tit. 15, § 78a et seq.; Regulation T of Board of Governors of Federal Reserve System) and a broker who persistently and intentionally is too indulgent with a customer in respect of margins doubtless will find himself in trouble with public authorities charged with the duty of enforcing such statute and regulation or with the governing body of his exchange charged with the duty of enforcing the rules of such exchange; but it seems to me clear that the mere failure of a broker to enforce, strictly and instantly, a margin requirement which the rules of his exchange entitle him to enforce against his customer does not give the customer a cause of action against the broker. The customer is the one who is speculating, not the broker. The customer has a strong financial incentive to watch *631 market fluctuations, and there is no suggestion that he lacks the facilities for keeping himself advised as to them. It also is easy for the customer to protect himself by giving an order to buy or sell when the market reaches a stated point; and I hence think that the customer is the last person in the world who should be heard to complain that his broker has not been sufficiently exacting and stringent in requiring margin. I do not say that there cannot possibly be circumstances under which a broker could be held liable for damage actually shown to have resulted to the customer from the broker’s failure to require margin. I merely say that mere failure to comply with the rule in question does not impose upon the broker absolute liability for subsequent market fluctuations.
“ Similarly, even if plaintiff violated a rule of the exchange by extending credit to defendant, that violation does not give the defendant a cause of action.”
Appel v. Levine (85 F. Supp. 240) and Remar v. Clayton Securities Corp. (81 F. Supp. 1014) are readily distinguishable on their facts and are thus inapposite.
The Appel case involved a motion to dismiss a complaint for insufficiency in an action brought for damages under a conspiracy and scheme to cheat, injure and defraud the plaintiff and for the misappropriation and conversion of his moneys with the utilization of regulation “ T ” as the medium therefor.
The Remar case involved loans made by a bank allegedly in violation of regulations “ T ” and “ U ”.
Accordingly, plaintiff’s motion for summary judgment is granted, defendant’s answer is stricken, and judgment may be entered by the plaintiff as demanded in the summons and oral pleading.