**DORSEY & COMPANY, INC., Plaintiff,**

v.

**BANQUE NATIONAL de la REPUBLIC D'HAITI, Defendant.**

**No. 73 Civil 4069.**

United States District Court,
S. D. New York.

March 21, 1975.

894

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for plaintiff; Edward L. Sadowsky, Noah S. Baer, New York City, of counsel.

Lunney & Crocco, New York City, for defendant; Michael J. McAllister, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

Plaintiff, Dorsey & Company, Inc., a stock brokerage house located in New Orleans, Louisiana, brought this action against Banque National De La Republic D'Haiti ("Banque") for damages allegedly caused by Banque's negligence in handling stock certificates and drafts transmitted to it for collection by plaintiff's agent, the Hibernia National Bank ("Hibernia Bank"), also located in New Orleans. The stocks in question had been purchased by plaintiff for the account of two of its customers, Williams Investors and Whitkind Realty; it was at their instruction that plaintiff, on September 25, 1972, caused the stock certificates and drafts totalling $628,434.64 to be sent by registered mail to defendant Banque for collection from one Paul Supart & Co.

The instructions contained in the collection letters accompanying the stock certificates and drafts directed the Banque to deliver them against payment by Paul Supart, the drawee, and to remit the proceeds by cable. The instructions further provided that in the event of nonpayment of the drafts, or delay in payment or acceptance, or dishonor the Banque was to notify the Hibernia Bank promptly stating the reasons therefor.

The Banque received the documents and stock certificates on or about September 29, 1972; however, for reasons set forth hereafter, it never presented the drafts or received payment, nor did it notify the Hibernia Bank promptly of delay in payment or acceptance giving reasons therefor. The package containing the certificates and the drafts was returned to the Hibernia Bank on De-

cember 22, 1972, by which time the value of the shares was considerably lower than on the date when the Banque received them on September 29, 1972. The plaintiff, having been unable thereafter to collect payment from its customers, Williams Investors and Whitkind Realty, sold the securities at a loss, which it seeks to recover.

The evidence upon the trial established that on or about September 30, 1972, a day after the package containing the drafts and certificates arrived at the Banque, Banque sent it to the post office at Haiti for return to the Hibernia Bank. However, as the defendant itself acknowledges, "inexplicably, the Haitian Post Office did not return the package containing the certificates and drafts until on or about December 1, 1972, and then by steamship," and, as noted, the package was delivered to the Hibernia Bank three weeks later on December 22, 1972.

Prior thereto other events had occurred. The Hibernia Bank, not having heard from Banque, cabled it on October 2, 1972, requesting confirmation of the receipt of the documents and information as to whether they were paid. The Banque responded on October 11th by cable to the Hibernia Bank that the documents were "apparently not received to date." On October 17th Hibernia Bank again cabled Banque: "Please investigate again and cable results"; this was followed up on October 20th when the Hibernia Bank sent another cable to Banque: "As soon as you receive advise urgently by cable." On October 26th Hibernia Bank again cabled Banque requesting that it be advised by cable of the receipt or non-receipt of the documents. Finally, on October 31st Banque cabled Hibernia Bank that the documents had not been received to date. On November 16th, acting under the belief that the documents had been lost in the mails, and stating that "[o]ur post office has been unable to get a reply from the Post Office in Haiti," the Hibernia Bank sent duplicate copies of the collection

letters to Banque, requesting Banque to assist it in tracing the package of documents and to complete mail loss affidavits. Hibernia Bank then followed up on November 20th with another cable requesting confirmation of its letter and of the Banque's intention to provide the mail loss affidavits. Still without word from the Banque on November 28th, a representative of the Hibernia Bank called an official at the Banque in Port-au-Prince, who apparently professed lack of knowledge of the matter, whereupon the representative of the Hibernia Bank on that day sent another letter to the Banque confirming their conversation and enclosing a copy of its November 16, 1972 letter and additional mail loss affidavits with a request they be completed and returned immediately.

At this point, in the beginning of December 1972, Banque officials for the first time conducted an investigation which, according to them, revealed that a mail clerk, believing the documents were sent to the Banque in error, since Supart was not known in Haiti, had delivered them to the post office for return to the sender on September 30th. The Banque's comptroller, who supervised the investigation, testified that the Collection Department was unaware of what the mail clerk had done with the documents. However, the Banque is responsible for the actions of its employees, whether employed in the Mail Department or in the Collection Department. Additionally, there is no explanation for the delay in answering Hibernia's cables and letters of inquiry, or for the misstatement that the documents apparently had not been received, or for failure to notify the Hibernia Bank promptly of nonpayment, no matter what the reason. A prompt inquiry would have disclosed the facts when the Hibernia Bank, on October 2, first requested confirmation of the receipt of documents, and thereafter when cable after cable was sent. The Banque clearly was negligent in the handling of the transaction; its acts and omissions to act were not

only negligent, but misleading. Indeed, the Banque practically conceded its negligent conduct when on December 19th it cabled the Hibernia Bank that it had returned the documents "by error on September 30, 1972 thru the post office," added that "we are at your disposal for collecting" the items, and concluded with "apologies."

■ The parties are in agreement that the law of Haiti governs on the issue whether the conduct of defendant casts it in liability to plaintiff, and that two provisions of the Haitian Civil Code are applicable:

"Article 1168—Any act by a person which causes prejudice to another, obliges said person through whose fault the prejudice occurs, to repair it."

"Article 1169—Everyone is liable for the prejudice he has caused, not only through his act, but also through his carelessness or imprudence."

The parties also agree that "carelessness or imprudence" connotes the usual standards in determining negligent conduct.

■ The legal expert called by defendant acknowledged the applicability of these provisions to the issues at hand. However, without citation of authority, based upon a hypothetical question, he expressed the opinion that upon the facts both the plaintiff and defendant were negligent, and in consequence the defendant would not be held liable. He was of the view that the greater fault was with the plaintiff because it failed to furnish the address of the drawee. However, the determination of the fact issue is, of course, for the trier of the fact. I find no basis upon which to hold that plaintiff was negligent in this transaction. The expert was voluble but far from impressive, and considering that he was counsel for defendant Banque, to whom he previously had given an opinion ex-

onerating it from liability, he can hardly be considered an objective witness.

■ The defendant persists in its contention that plaintiff was also at fault, that plaintiff's contributory negligence was a proximate cause of its losses, and that plaintiff is therefore barred from recovery. Essentially, defendant's claim is that the plaintiff had failed to use due diligence to ascertain the essential facts pertaining to the principals of Williams Investors and Whitkind Realty; that these principals were engaged in fraudulent activities; and that the direction to present the drafts for payment by Paul Supart in Port-au-Prince, Haiti, was itself part of a fraudulent scheme, since Paul Supart either did not exist or had no place of business in Port-au-Prince. To support its claim that plaintiff was contributorily negligent, defendant contends that plaintiff, in connection with the Williams Investors and Whitkind Realty accounts, violated various rules and regulations: SEC Rule 15b10–3,[1] the "Suitability Rule"; Rule 405 of the New York Stock Exchange, the "Know Your Customer" Rule; SEC Rule 15b10–4,[2] which among other things requires supervision of customer accounts; and sections 4(c)(2), (5) and (8) of Regulation T.[3]

It is defendant's contention that if the plaintiff had used due care throughout its dealings with the accounts in question, and had not violated the rules and regulations referred to above, it never would have opened the two accounts and never would have sent the drafts and stock certificates to the defendant Banque for collection—or, put another way, that plaintiff, through its own negligence, set in motion a series of events which, in any event, could only have resulted in a return of the certificates and unpaid drafts. This defense must fail; it amounts to no more than an argument that if the transaction had never taken

---

1. 17 C.F.R. § 240.15b10–3.

2. 17 C.F.R. § 240.15b10–4.

3. 12 C.F.R. § 220.4(c)(2), (5) and (8).

place there would have been no damages and no loss.

From April to August, 1972, prior to the first purchase of securities involved in this action, plaintiff had purchased other securities for Williams Investors and Whitkind Realty in similar fashion on six or seven occasions. The only difference between those six or seven transactions and the instant transaction was that the drafts in the prior transactions were drawn upon and presented for payment to a drawee in Montreal, Canada. In each of those transactions payment was made in due course. The plaintiff's successful experience in the Canadian transactions justified it in accepting its customers' instructions in the instant transaction.

More importantly, however, even if the plaintiff can be said to have been negligent, either by virtue of a violation of a regulation or a violation of some independent duty, its negligence was not a proximate cause of the damages it seeks to recover in this lawsuit. It is inescapable that if the Banque had acted with due care and, following instructions, promptly notified the plaintiff of nonpayment and returned the securities, plaintiff would have been able to either obtain payment from its customers or, failing that, effect a sale of the securities to mitigate its damages. Not only did the Banque fail to follow the instructions in the collection letters, thereby violating its acknowledged practice of following instructions accompanying drafts, but it subsequently compounded its negligent conduct over a two and a half month period by failing to conduct a prompt investigation after the Hibernia Bank's repeated inquiries, and by misleading the Hibernia Bank and the plaintiff into believing that the Banque had not received the drafts and certificates.

It was this negligence on the Banque's part, not any alleged negligence of the plaintiff, that was the proximate or legal cause of the losses plaintiff seeks to recover. Assuming that plaintiff was negligent, such negligence could have been a proximate cause only of any loss representing the decrease in value in the securities from the time of their purchase to the time when they would have been returned by the Banque had it acted with due care, but plaintiff does not seek to recover this portion of its loss. The claim is confined to the decrease in the value of the securities during the period commencing with the Banque's failure promptly to notify plaintiff of nonpayment contrary to instructions, and ending on the date of the return of the securities; as to these losses the Banque's negligence was the sole proximate cause.[4]

The alleged violations of the regulations referred to have been advanced by defendant under its plea of contributory negligence, which the court rejects. Upon the trial and in its post trial brief, the defendant apparently sought to expand its defense by claiming that the alleged violations of rules and regulations are an absolute bar to plaintiff's claim, regardless of whether they were a proximate cause of plaintiff's loss. Assuming that a violation by itself carries with it an absolute forfeiture of plaintiff's right to recovery against a third party like the defendant,[5] the defendant's failure to plead this as an affirma-

---

4. *See generally* Prosser, The Law of Torts § 44 at 281–86, § 52 at 317–320 (4th ed. 1971).

5. The defendant has not pointed to any case in which any such defense was asserted by a third party. Nor has it offered any support for dispensing with the requirement of showing proximate cause as a part of any such defense. Indeed, the existence of such a requirement has support. Irving Weis & Co. v. Offenberger, 31 Misc.2d 628, 220 N.

Y.S.2d 1001 (Mun.Ct.1961); E. F. Hutton & Co. v. Weinberg, [1961–64 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 91,332 (N.Y.Sup.Ct. 1964). Dispensing with the requirement would also run counter to the requirement of showing proximate cause as part of an affirmative action for damages for alleged violations of the securities laws. *See* VI Loss, Securities Regulation 3880–83 (1969); V Loss, *supra*, at 3301, 3307–08, III Loss, *supra*, at 1759 (1961).

tive defense bars its consideration by the court.[6]

Plaintiff is entitled to recover damages based upon the difference between the value of the securities on the date the Banque received them plus a reasonable time for presentation for payment to the drawee and notification of nonpayment, in this instance, October 2, 1972, and their value upon the date they were received, December 22, 1972, when they could have been sold by plaintiff in the event its customers did not make payment.

The parties have agreed that the market value of the securities on October 2, 1972 was $567,375, and that their value on December 22, 1972 was $530,405, a difference of $36,970, to which sum plaintiff is entitled to judgment together with interest.

In view of the fact that plaintiff has prevailed upon its claim, the defendant's counterclaim based upon the attachment heretofore granted is dismissed upon the merits.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

---

6. Fed.R.Civ.P. 8(c) ; *see* Trio Process Corp. v. L. Goldstein's Sons, Inc., 461 F.2d 66, 74 (3d Cir.), cert. denied, 409 U.S. 997, 93 S. Ct. 319, 34 L.Ed.2d 262 (1972) ; Radio Corp. of America v. Radio Station KYFM, Inc., 424 F.2d 14, 17 (10th Cir. 1970) ; Roe v. Sears, Roebuck & Co., 132 F.2d 829, 832 (7th Cir. 1943) ; United States v. Commercial Union Ins. Group, 294 F.Supp. 768, 772 (S.D.N.Y.1969).