**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**E. B. BROOKS, Jr., Defendant.**

**Civ. A. No. CA–3–7898–D.**

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 11, 1975.

Robert G. Vial, Dallas, Tex., for plaintiff.

B. Thomas McElroy, Dallas, Tex., for defendant.

## ORDER

ROBERT M. HILL, Judge.

The above cause came on for trial before a jury and each of the parties has moved for a judgment in its favor. The court is of the opinion that judgment should be entered in favor of the plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter "Merrill Lynch"), against the defendant, E. B. Brooks, Jr. (hereinafter "Brooks"), for the amount claimed.

By their answers to special interrogatories the jury found that:

(1) Merrill Lynch negligently maintained Brooks' commodity account in an under margin condition (Question 1); and,

(2) Such negligence was a proximate cause of losses in Brooks' account (Question 2);

(3) Merrill Lynch should have stopped its maintenance of Brooks' ac-

count in an under margin condition on April 16, 1973 (Question 3);

(4) Merrill Lynch's failure to give Brooks a margin call prior to May 2, 1973, (the date on which a formal call was given) was negligent (Question 4);

(5) Brooks would not have liquidated his acount had Merrill Lynch given a margin call prior to May 2, 1973 (Question 5);

(6) Brooks consented to Merrill Lynch's failure to make a margin call prior to May 2, 1973, and to liquidate his account prior to May 9 and 11, 1973, the dates on which the account was liquidated by Merrill Lynch (Question 7).

The issue to be determined is whether Merrill Lynch's conduct in failing to liquidate Brooks' account on April 16, 1973, and in failing to give Brooks a margin call before May 2, 1973, prevents it from recovering the deficit of $198,-262.00 that resulted when Brooks' account was liquidated on May 9 and 11, 1973.

Merrill Lynch based its suit on a Commodity Account Agreement (hereinafter "Agreement") between it and Brooks (Plaintiff's Exhibit 1) and a letter dated May 7, 1973, from Brooks to Merrill Lynch's office manager, N. R. Davis (Plaintiff Exhibit 4). The Agreement provided that it "shall be governed by the laws of the State of New York."

■■ When parties agree that the law of a particular State shall govern a contract that law shall apply if it has a reasonable relationship to the agreement. *Aboussie v. Aboussie*, 441 F.2d 150 (5th Cir. 1971); *Teas v. Kimball*, 257 F.2d 817 (5th Cir. 1958); *Securities Investment Co. v. Finance Accept. Corp.*, 474 S.W.2d 261 (Civ.App.-Houston 1st Dist.—1971), ref.n.r.e. It is undisputed in this case that Merrill Lynch's office in New York City determined margin requirements for commodity accounts and notified its local offices of the necessity for margin calls. Merrill Lynch's New York office determined that Brooks' account was in an under margin condition and so notified the Dallas office on May 1. The Dallas office in turn notified Brooks on May 2 of the margin condition of his account and made a margin call on him at that time. Since part of the Agreement was performable in New York, there is a reasonable relationship between New York law and the Agreement which justifies enforcing the Agreement according to New York law interpretations and constructions. Throughout the trial, Brooks' position was that Merrill Lynch's failure to liquidate Brooks' account immediately when it became under margin violated various regulations of the Chicago Board of Trade and New York Stock Exchange, and that such violations precluded Merrill Lynch from recovering any losses it suffered.

■■ Under New York law every violation by a broker of a statutory command or prohibition or of a rule of an exchange does not result in the inability of a broker to enforce civil liability on a customer. *Irving Weis and Co. v. Offenberger*, 31 Misc.2d 628, 220 N.Y.S.2d 1001; *Nichols & Co. v. Columbus Credit Corp.*, 204 Misc. 848, 126 N.Y.S.2d 715. In the case *sub judice* Brooks had full knowledge each day of the margin condition of his account, and he could have covered his short trades which would have stopped his losses. Further, Brooks knew when his account first became under margin, and he knew that he was subject to a margin call at that time. With full knowledge of these facts, Brooks gave a letter to Merrill Lynch on May 7 stating that he "acknowledged the unsecured amount of money" owed to Merrill Lynch and he agreed to pay the "total amount of his indebtedness" when it was determined. These facts coupled with the jury's findings that Brooks would not have liquidated his account had Merrill Lynch made a margin call on him before May 2 and that Brooks consented to Merrill

Lynch's failure to make a margin call prior to May 2 and to liquidate his account prior to May 9 and 11 compel the conclusion that under New York law Merrill Lynch's conduct does not bar its right to recover the deficiency in Brooks' account after it was liquidated. The court does not believe that the jury's finding that Merrill Lynch's conduct was negligent alters the result under New York law.

If one assumes arguendo that New York law is not applicable, Merrill Lynch is nevertheless entitled to recover in this case. Brooks relies on *Goldenberg v. Bache and Company*, 270 F.2d 675 (5th Cir. 1959), and *Gordon v. duPont Glore Forgan, Inc.*, 487 F.2d 1260 (5th Cir. 1974), in support of the proposition that a negligent broker is precluded from ever recovering deficits in his customers' account. In each of these cases a stockbroker's customer brought an action for damages suffered when a margin account was liquidated by the stockbroker due to an under margin condition of the account. In each case the stockbroker counterclaimed for a post-liquidation deficiency in the account. In these two cases the stockbrokers were found to have made a tardy margin call on their customers. However, the court declined to grant either party relief, leaving both as it found them by ordering the entry of a judgment that neither party recover from the other. This court is of the opinion that these two cases are factually different from the case *sub judice*.

In *Goldenberg* and *Gordon* the court dealt perfunctorily with the counterclaim of the broker for the deficit that existed in the accounts after they were liquidated. The deficits were small. In neither case was there an express finding that the customer consented to or ratified the negligent conduct of the broker; whereas, in the case at bar the jury specifically found that Brooks consented to Merrill Lynch's failure to make a margin call before May 2, when a call was made and to Merrill Lynch's failure to liquidate his account before May 9 and 11.

In dealing with a principal's liability to his agent Texas courts permit an agent who has acted adversely to the interest of his principal to recover for services performed by the agent where the principal ratifies the wrongful acts of the agent. 2 Tex.Jur. (2d) Agency § 141. Pursuant to general principles of Texas law, Brooks' letter of May 7 constitutes a ratification of any negligent or wrongful conduct by Merrill Lynch in the handling of his account before that date. This letter coupled with the jury finding that Brooks consented to Merrill Lynch's conduct in tardily making a margin call and in the manner in which his account was liquidated should not bar Merrill Lynch, as agent, from recovering from Brooks, as principal, the deficit that existed after liquidation. The right of Merrill Lynch to recover herein is in keeping with the decision in *Hornblower & Weeks-Hemphill, Noyes v. D & G S & M Co.*, 390 F.Supp. 715 (N.D.Tex.1975), in which Judge William M. Taylor, Jr., confronted with similar facts, permitted a broker to recover a deficit in a margin account despite the customer's claim that the broker should be denied recovery since it had failed to liquidate the account promptly when it became under margined.

A contrary rule would perhaps be in order if we were dealing with an unsuspecting investor. In such instances the broker has a greater responsibility to the customer. But Brooks was a sophisticated and knowledgeable investor who carefully followed his account with greater acumen than that demonstrated by his broker. He was the kind of investor who was able to knowingly consent, as the jury found, to having his account carried. In fact, he did more than acquiesce, he encouraged the carrying of his account. He was always in a position to close his account, but as the jury found, he would not have done so even if Merrill Lynch had made a margin call on him. The thrust of Brooks' position

is that Merrill Lynch "injured him" when it heeded his overtures and entreaties.

Brooks argues that Merrill Lynch, having begun to carry the account in violation of the rules, was obliged to carry the account until Brooks ordered its liquidation. In these circumstances the court cannot adopt Brooks' proposed rule, which resembles the adage, "heads I win, tails you lose." In effect the customer would be granted a free ride. After a margin call is required and the broker fails to issue the call, the knowledgeable customer is in an enviable position. If the market continues adversely to the customer's position, he can disclaim his usual responsibility for paying any resulting deficit in his account following liquidation. At the same time if the market "turns around," the customer is able to lay claim to any profit resulting from a favorable market which eliminates the necessities for a margin call.

For the foregoing reasons this court is of the opinion that Merrill Lynch's motion for judgment should be sustained and that Brooks' motion for judgment should be denied. Judgment will be entered in favor of Merrill Lynch for the amount sought in this case.

It is so ordered.