MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiffs-Appellees,

v.

E. B. BROOKS, Jr., Defendant-Appellant.

No. 76–1462.

United States Court of Appeals, Fifth Circuit.

March 14, 1977.

Rehearing and Rehearing En Banc Denied April 7, 1977.

B. Thomas McElroy, Peveril O. Settle, III, Dallas, Tex., for defendant-appellant.

Robert G. Vial, Paul D. Schoonover, Dallas, Tex., for plaintiffs-appellees.

Before BROWN, Chief Judge, AINSWORTH, Circuit Judge, and JAMESON[*], District Judge.

PER CURIAM:

Essentially this case may be summarized as one where a commodities broker extended credit—over-extended that is—to a sophisticated commodity futures investor who at all times possessed knowledge of his deficient margin account status and who now contends he should not be required to pay back any remaining indebtedness because the extension of credit violated a rule or regulation of the Chicago Board of Trade. To adopt such an argument would permit commodity futures investors know-

---

[*] Senior District Judge for the District of Montana, sitting by designation.

ingly to accept extensions of credit from a broker which violate the Board of Trade's rules or regulations and repudiate losses that ensue or accept profits that follow. The only risk to the investor would be his initial deposit in a margin account, "initial margin", which represents only a fraction of the potential losses or hoped for profits. We do not accept this position and affirm on the basis of the District Court's opinion, *Brooks v. Merrill Lynch, Pierce, Fenner & Smith, Incorporated,* N.D.Tex., 1975, 404 F.Supp. 905.

In 1964, Brooks (Investor) initially opened a commodities margin account [1] with Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) so he could buy and sell commodity futures contracts for investment purposes. Unlike many, Investor was not a speculator or dilettante. Rather, he has in general great business acumen and possesses in particular extensive knowledge about commodity investing.

During April 1973, Investor utilized his margin account and acquired twenty-four soybean meal futures contracts calling for delivery in July 1973.[2] Unfortunately, his visions of aggrandizement vanished as the price of soybean meal increased which, under Rule 210 and Regulation 1822, ¶ 14 of the Chicago Board of Trade, necessitated that Investor increase the balance in his margin account. This increase is called the "maintenance margin".

Merrill Lynch did not notify Investor on April 12, 1973, the day his margin account became insufficient or "under margined", and not until May 1, 1973 did it demand that Investor deposit the contractually required "maintenance margin". Despite this failure to timely demand, Investor knew at all times of the deficiency in his account. In fact Investor went to Merrill Lynch's local office daily to check on his commodities transactions. Faced with this demand to meet the maintenance margin requirement, on May 7, 1973, Investor agreed in writing to be liable to Merrill Lynch for all amounts, including losses, that might be due under the margin contract.

As this letter agreement turned out to be insufficient to the broker's management and no effort was made by Investor to meet the known margin deficiency, Merrill Lynch proceeded on May 9 under its Commodity Account Agreement with Investor to cover Investor's twenty-four contracts and liquidated his margin account at an indebtedness of $198,262. This liquidation occurred later than it could have had the demand for maintenance margin been made on April 12. Rule 209 of the Chicago Board of Trade allows reasonable time to meet such a demand which is interpreted to be one hour in usual circumstances.

Because we affirm on the basis of the District Court's opinion, extended discussion of this case is unwarranted. However, two comments are appropriate. One distinguishes prior Fifth Circuit authority and the other re-emphasizes the salutary nature of Special Verdicts under F.R.Civ.P. 49(a).

■ In Investor's brief and during oral argument, this Court's attention was directed to two Securities Exchange Act of 1934 [3] opinions, *Gordon v. du Pont Glore Forgan Incorporated,* 5 Cir., 1973, 487 F.2d 1260, 1262; and *Goldenberg v. Bache & Company,* 5 Cir., 1959, 270 F.2d 675, 681, where we declined to allow recovery by a stockbroker from an investor for the amount of the deficiency in his margin account. We believe that regulations promulgated by the Securities and Exchange Commission which have the force and effect of law pertaining to securities sufficiently differentiate those

---

**1.** A margin account allows one to purchase a commodity contract by maintaining only a fraction of the actual purchase price in the margin account.

**2.** Investor was in a "short" position. This is when one acquires a contract to sell a commodity for future delivery without actually owning the commodity. If all goes according to an investor's plans, the price of the commodity falls and he is able to purchase the commodity at a price below that in his "sell short" contract. Thus, a profit is realized and is the difference between the "sell short" contract price and the price of the commodity he purchases to satisfy these contracts.

**3.** 15 U.S.C.A. § 78a *et seq.*

cases from this commodities case in which the futures market of short positions serves economically quite a different function in providing hedges to many facets of the commodity world. As such, they are inapplicable and are of no aid to a knowledgeable investor whose only complaint is that the broker, to investor's knowledge, was extravagant in the credit extended.

Our second comment is to point out once again how valuable the use of special interrogatories with a general charge under F.R.Civ.P. 49(a) has been in this case. Here, the jury answered a series of questions submitted by the court that found in critical part that Investor had consented to Merrill Lynch's failure to liquidate his margin account promptly in April or prior to May 9 and that Investor, himself, would not have liquidated the account even if a timely margin call had been given.[4] Based on the jury's own findings and the applicable law, the Judge was able, as we affirm, to enter judgment in favor of Merrill Lynch without divining what basis the jury might have had in a general verdict for either Investor or Broker. In simplest terms, the trial court followed the special verdict procedure of F.R.Civ.P. 49(a). See J. Brown, Federal Special Verdicts: The Doubt Eliminator, 5 Cir., 44 F.R.D. 338 (1969); *Wolfe v. Virusky,* 5 Cir., 1972, 470 F.2d 831, 837 (Brown, C. J., concurring); *In re Double D Dredging Co.,* 5 Cir., 1972, 467 F.2d 468, 469 n. 3; *Thrash v. O'Donnell,* 5 Cir., 1971, 448 F.2d 886, 889–92; *Little v. Bankers Life & Casualty Co.,* 5 Cir., 1970, 426 F.2d 509, 512 (Brown, C. J., concurring); *Horne v. Georgia So. & Fla. Ry.,* 5 Cir., 1970, 421 F.2d 975, 980 (Brown, C. J., concurring). Notwithstanding Investor's protestations, no error arises when, as here, a trial court properly utilizes the special verdict device.

When a business person with expertise in commodities trading and with full knowledge of all happenings and their ramifications accepts credit from a broker, as Investor has done, this Court will not relieve this Investor or any investor of an obligation unless singular circumstances exist. That a loss was incurred is not such a circumstance. For the foregoing reasons, the judgment of the District Court is affirmed.

AFFIRMED.

---

4. Questions five and seven elicited these findings. (R. 173–83).