**SHEARSON HAYDEN STONE, INC.**

v.

**Vance W. LIDDELL.**

**Civ. A. No. 80–163.**

United States District Court,
E. D. Louisiana.

July 23, 1981.

Phillip A. Wittmann and Stephen H. Kupperman, New Orleans, La., for plaintiff.

Taylor W. O'Hearn, Shreveport, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Shearson Hayden Stone, Inc. is a brokerage house having its principal place of business in New York, with an office in New Orleans, Louisiana.

2. On or about November 1, 1978, Vance W. Liddell, a Louisiana resident and domiciliary, opened a commodity trading margin account with Shearson's New Orleans office.

3. This margin account allows the investor, Vance W. Liddell, to purchase commodity contracts at a fraction of the actual purchase price. As market fluctuations occur, less margin (in market conditions favorable to the investor's position) or more margin (in adverse market conditions) can be required in order to maintain the investor's market position.

4. Upon opening his account with Shearson on November 1, 1978, Liddell signed a Commodity Customer Agreement. Under the terms of this agreement, Liddell agreed to pay for all transactions entered on his behalf and in his account by Shearson. Liddell also obligated himself to pay interest on all amounts owed by him to Shearson at the prevailing rates applicable by operation of New York law. He was further obligated to satisfy all margin requirements and had authorized Shearson to liquidate his account without notice if he failed, on de-

mand, to transmit funds sufficient to cover demands made consistent with the contract agreement.

5. Prior to November 1, 1978, Liddell had traded in commodities futures for 20 years through various brokerage houses.

6. In August, 1979, Liddell entered the Chicago silver market through a margin account at Shearson, by agreeing to sell short[1] one silver contract. This contract was for 5000 troy ounces of silver, to be delivered in February, 1980.

7. On September 18, 1979, the price of silver had increased to a point where the margin funds provided by Liddell to Shearson were no longer sufficient to cover his short silver margin position in February Chicago silver, which Liddell had purchased in August.

8. Tom Hawley, Liddell's account executive at Shearson, spoke with Liddell on September 18, 1979, and informed him that his account was undermargined. He requested that Liddell send funds sufficient to meet his current margin requirements, and warned Liddell that the silver market position would be liquidated if funds were not transmitted to Shearson. Liddell asked Hawley not to liquidate his position, stating that he would pay the amount due. However, Shearson received no payment from Liddell on September 18, 1979.

9. Hawley made numerous requests for payment from Liddell during the following days, during which the price of silver futures continued to escalate thereby further increasing the margin required in Liddell's account. Hawley continued to seek immediate payment, again warning Liddell of the implications attendant upon further delay. Liddell responded that he would pay all amounts owed to Shearson. However, by the end of the day on September 20, 1979, Shearson had received no funds from Liddell in satisfaction of the deficiencies in his account.

---

1. A "short" position is one in which the investor acquires a contract to sell a commodity for future delivery without actually owning the commodity. If all goes according to the investor's plan, the price of the commodity falls and he is able to purchase the commodity later at a price below that at which he is obligated to sell the commodity under his "short" contract. The profit is the difference between the "short" contract price and the price at which the commodity was purchased.

10. On September 21, 1979, Hawley again spoke with Liddell advising him to transmit funds for his account or risk liquidation of his position. Liddell requested that Shearson permit him to purchase a long position in silver, in order to spread the market. He told Hawley that he was attempting to raise the money. Hawley told Liddell that Shearson would execute the spread, but only if he wired $10,000 to the New Orleans office immediately, an amount substantially sufficient to cover Liddell's account deficit. Hawley informed Liddell that if he did not wire the funds to New Orleans, Shearson would liquidate his market position. Liddell responded that he could not wire any funds, but he again asked that Shearson not liquidate his position.

11. Liddell had agreed to maintain a properly margined account with Shearson. He knew the risks of trading in commodities and agreed that if he failed to keep his account properly margined, Shearson could liquidate the account summarily, without notice. Fully aware of these risks, Liddell failed to maintain his account with proper margin. In fact, he allowed his account to incur a substantial deficit.

12. Rather than immediately liquidating Liddell without notice, Shearson attempted to work and cooperate with Liddell. Shearson notified the defendant several times that his account was undermargined and that he must transmit funds or his position would be liquidated. At Liddell's request and based on repeated assurances that his margin requirements would be met, Shearson further delayed liquidating Liddell's account.

13. Shearson liquidated Liddell's position in the silver market near the opening of the market on Monday, September 24, 1979. The transaction resulted in a deficit and unsecured debit balance in Liddell's account with Shearson in the amount of $14,542.62.

14. Interest on the principal debit balance in Liddell's account has, since that date, been accruing at the highest allowable rate of interest under New York laws consistent with the conditions of the Commodity Customer Agreement previously noted. Interest from September 24, 1979, through June 10, 1981, on Liddell's principal debit balance is $3,051.98. This interest is derived from the various maximum rates applicable during the period in question, as follows:

```
Effective May 1, 1979:          9.75% per annum
Effective August 1, 1979:      10.00% per annum
Effective November 1, 1979:    10.25% per annum
Effective February 1, 1980:    10.5 % per annum
Effective May 1, 1980:         10.75% per annum
Effective August 1, 1980:      11.00% per annum
Effective December 1, 1980:    16.00% per annum.
```

### Conclusions of Law

1. The court has jurisdiction pursuant to 28 U.S.C. § 1332.

2. Commodity customer agreements, such as the one involved here, are enforceable and provide a basis for imposing customer liability for a deficit remaining after liquidation under conditions noted above. *Merrill Lynch v. Brooks*, 548 F.2d 615 (5th Cir., 1977); *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367 (7th Cir., 1978); *Geldermann & Co. v. Lane Processing, Inc.*, 527 F.2d 571 (8th Cir., 1975).

3. Judgment should be rendered in favor of Shearson and against Liddell in the principal amount of $14,542.62, together with accrued interest of $3,051.89, and interest at the rate of 16% per annum from June 10, 1981, until paid.

Plaintiff is directed to prepare a judgment consistent with these findings.